

# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA

### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
## SUMMONS

| | |
|---|---|
| Cellairis Franchise, Inc. and Global Cellular, Inc. <br><br> **Plaintiff,** <br><br> **vs.** <br><br> GMD Silver, Inc., Golam M. Rahman, Individually, and Rafik Howlader, Individually **Defendant** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Case No.: 2010 CV188412

TO THE ABOVE NAMED DEFENDANT(S):

Your are hereby summoned and required to file with the Clerk of said Court and serve upon plaintiff's attorney, whose name and address is:

> Robert J. Kaufman
> Kaufman, Miller & Sivertsen
> 8215 Roswell Road, Building 800
> Atlanta, GA 30350

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This _____ 16th _____ day of _____ July _____, 20 10

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court

By _____
Deputy Clerk

To defendant upon whom this petition is served:

This copy of complaint and summons was served upon you_____, 20_____

_____
Deputy Sherriff

**EXHIBIT
A**

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| CELLAIRIS FRANCHISE, INC. and | ) | |
| GLOBAL CELLULAR, INC. | ) | CIVIL ACTION FILE |
| | ) | NO:  2010CV188412 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GMD SILVER, INC., | ) | |
| GOLAM M. RAHMAN, Individually, and | ) | |
| RAFIK HOWLADER, Individually | ) | |
| | ) | |
| Defendants. | ) | |

FILED IN OFFICE

JUL 1 6 2010

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

## VERIFIED COMPLAINT

Cellairis Franchise, Inc. (**"Cellairis"**) and Global Cellular, Inc. (**"Global"**) (collectively

referred to as **"Plaintiffs"**) by their undersigned attorneys, file this their Complaint against

Defendant GMD Silver, Inc. (**"GMD"**), Defendant Golam M. Rahman (**"Golam"**), and

Defendant Rafik Howlader (**"Rafik"**) (collectively referred to as **"Defendants"**) and shows this

Honorable Court the following:

1.

Plaintiffs are Georgia corporations, organized, existing and qualified to do business in the

State of Georgia with their principal places of business in Georgia.

2.

GMD Silver, Inc. is an Ohio Corporation with its principal place of business in Ohio, and

is subject to the jurisdiction and venue of this Court, and may be served by Second Original at

4860 Noor Drive, Dublin, Ohio 43016.

3.

Defendant Golam is the owner of GMD and has personally guaranteed all of the payments and performances of GMD and is a resident of the State of Ohio, is subject to the jurisdiction and venue of this Court, and may be served by Second Original at 4860 Noor Drive, Dublin, Ohio 43016.

4.

Defendant Rafik is a resident of the State of Ohio, is subject to the jurisdiction and venue of this Court, and may be served by Second Original at 508 Inverness Avenue, Delaware, Ohio 43015.

5.

Pursuant to O.C.G.A. §§ 9-10-90, 9-10-91, 9-10-93, Defendants are subject to the jurisdiction and venue of this Court.

6.

Furthermore, pursuant to section 13(D) of the Franchise Agreement (as defined below),

> FRANCHISEE [GMD] and Company [Cellairis] acknowledge and agree that the U.S. District Court for the Northern District of Georgia or the State courts of Georgia shall be the venue and exclusive proper forum in which to adjudicate any case or controversy arising, either directly or indirectly, under or in connection with this Franchise Agreement and the parties further agree that, in the event of litigation arising out of or in connection with this Agreement in these courts, they will not contest or challenge the jurisdiction or venue of these courts.

7.

Cellairis is the owner of a system (**"System"**) for the operation of Cellairis® branded carts and kiosks (**"Business Units"**) which specialize in the sale of wireless/cellular telephone

accessories and other related products (**"Products"**), and Cellairis sells franchises to citizens of this state and other states across this country to operate Business Units that utilize the System.

8.

Global is an affiliate of Cellairis and Global is the sole approved supplier of Products that are sold from the Business Units.

9.

GMD entered into 15 identical franchise agreements with Cellairis for the operation of 15 Business Units (**"Franchise Agreements"**) for a period of 5 years (**"Term"**).

10.

GMD entered into 13 identical sublease agreements with Global in order to lease the Business Units (**"Sublease Agreements"**). For the two additional units located at the Fairfield Commons Mall located in Beavercreek, Ohio and Dayton Mall located in Dayton, Ohio, the underlying leases are in Defendants' name.

11.

Golam entered into 15 identical personal guaranty and subordination agreements with Cellairis in order to guaranty all of the payments and performance for GMD (**"Personal Guaranties"**).

12.

The Business Units were for the following locations (all 15 Business Units are collectively referred to as the **"Locations"**):

A.    On February 7, 2007, a franchise agreement was entered into for Tri-County Mall located in Cincinnati, Ohio.

B.    On September 1, 2007, a franchise agreement was entered into for Fairfield Commons Mall located in Beavercreek, Ohio which was subsequently abandoned by GMD.

C.    On September 1, 2007, a franchise agreement was entered into for Dayton Mall located in Dayton, Ohio.

D.    On February 2, 2008, a franchise agreement was entered into for Park Place Mall #2 located in Tucson, Arizona.

E.    On February 11, 2008, a franchise agreement was entered into for Park Place Mall #1 located in Tucson, Arizona.

F.    On February 11, 2008, a franchise agreement was entered into for Tucson Mall #1 located in Tucson, Arizona.

G.    On February 11, 2008, a franchise agreement was entered into for Tucson Mall #2 located in Tucson, Arizona.

H.    On August 4, 2008, a franchise agreement was entered into for Easton Town Center Mall located in Columbus, Ohio.

I.    On August 19, 2008, a franchise agreement was entered into for Metrocenter Mall located in Phoenix, Arizona.

J.    On August 19, 2008, a franchise agreement was entered into for Desert Sky Mall located in Phoenix, Arizona.

K.    On August 19, 2008, a franchise agreement was entered into for West County Center Mall #1 located in St. Louis, Missouri.

L.    On August 19, 2008, a franchise agreement was entered into for West County Center Mall #2 located in St. Louis, Missouri.

M.     On August 19, 2008, a franchise agreement was entered into for Fiesta Mall located in Mesa, Arizona.

N.     On October 10, 2008, a franchise agreement was entered into for Park City Center Mall located in Lancaster, Pennsylvania.

O.     On February 26, 2009, a franchise agreement was entered into for Flatiron Crossing Mall located in Broomfield, Colorado.

## COUNT I

## BREACH OF FRANCHISE AGREEMENTS

## BY COPYING THE CELLAIRIS® SYSTEM

## AGAINST DEFENDANTS GMD AND GOLAM

### 13.

Plaintiffs reallege and reincorporate the allegations contained in Paragraphs 1 through 12 verbatim as if fully set forth herein.

### 14.

Section 8(C) of the Franchise Agreements provides:

> FRANCHISEE acknowledges the uniqueness of the System and that Company is making its knowledge, know-how and expertise available to FRANCHISEE for the purpose of operating the Business Unit. FRANCHISEE agrees that it would be an unfair method of competition for FRANCHISEE to use or duplicate or to allow others to use or duplicate any of the knowledge, know-how and expertise received from Company for any use other than for the operation of franchised Business Units utilizing the System under the Marks. FRANCHISEE, therefore, warrants that during the Term of this Agreement, FRANCHISEE will utilize his best and continuing efforts to promote and develop the business at the Business Unit and during the Term hereof and at all times thereafter will not directly or indirectly engage in the operation of any business, other than the franchised Business Unit and other Business Units franchised from Company, which utilizes or duplicates the System, any trade secrets of Company, or the Marks.

15.

Defendants GMD and Golam, either acting alone or with others, have opened over 60 business units in malls in 16 different states under the name "CellAxs" that distribute cell phone accessories that are substantially similar to the business conducted under the Cellairis® System.

16.

Pursuant to the Personal Guaranty, Golam is bound by the obligations of the Franchise Agreements.

17.

Golam and GMD used the knowledge, know-how, and expertise that have been created by Cellairis to operate the CellAxs locations.

18.

Golam and GMD duplicated the Cellairis® System by opening and operating the CellAxs locations.

19.

Golam and GMD improperly sells Cellairis® branded products from the CellAxs locations.

20.

Some of the CellAxs locations were opened in malls where there is currently a Cellairis franchise located.

21.

The kiosk design, specifications, colors, and layout are part of Cellairis' trade dress ("**Trade Dress Items**").

22.

The CellAxs kiosks copy the Trade Dress Items, which were provided to Defendants GMD and Golam pursuant to the Franchise Agreements for the operation of the Cellairis Business Units.

23.

Golam and GMD utilized Cellairis' trade secrets to open and operate the CellAxs units.

24.

Golam and GMD utilized Cellairis' confidential information to open and operate the CellAxs units.

25.

Section 8(A)(1) of the Franchise Agreements provides "FRANCHISEE agrees not to divulge any of the trade secrets or confidential information to any person other than FRANCHISEE'S employees and then only to the extent necessary for the operation of the Business Unit."

26.

Golam and GMD's use of Cellairis' trade secrets and confidential information to create a competing business under the name CellAxs violates the Franchise Agreements.

27.

Golam and GMD's actions have impaired the Cellairis® System in violation of Section 8(A)(2) of the Franchise Agreements, which provide: "FRANCHISEE will not, directly or indirectly, at any time during the Term of this Agreement or thereafter, do or cause to be done any act or thing disputing, attacking or in any way impairing or tending to impair Company's or Global Cellular Inc.'s right, title or interest in the Marks or the System."

28.

Section 10(A)(14) of the Franchise Agreements provides a ground for immediate termination in the event "FRANCHISEE uses or duplicates the System or engages in unfair competition in violation of this Agreement or discloses any trade secrets of Company in violation of this Agreement."

29.

As a result of Defendants GMD and Golam's actions, the Locations were terminated. A true, accurate, and correct copy of the termination letter is attached as **Exhibit "A"**.

30.

Section 13(K) of the Franchise Agreements state, "In any litigation to enforce the terms of this Agreement, all costs and all attorney's fees (including those incurred on appeal) incurred as a result of the legal action shall be paid to the prevailing party by the other party."

31.

As a direct and proximate result of Defendants GMD and Golam's joint and several breaches of the Franchise Agreements, Plaintiffs are entitled actual damages in an amount to be determined at trial, plus prejudgment interest of 18% per annum, reasonable attorney's fees, expenses of litigation, and all costs of court.

32.

Defendants GMD and Golam, jointly and severally, acting in bad faith, have been unnecessarily and stubbornly litigious and have caused Plaintiffs unnecessary trouble and expense for which Plaintiffs are entitled to recover from Defendants GMD and Golam, jointly and severally, reasonable attorney's fees and all expenses of litigation.

33.

Defendants GMD and Golam's joint and several conduct and omissions complained of

hereinabove, evidence an entire want of care so as to raise the presumption of Defendants GMD

and Golam's joint and several conscious indifference to the consequences of their acts, conduct,

and omissions, consequently Plaintiffs are entitled to reasonable attorney's fees and expenses of

litigation of bringing this action due to Defendants GMD and Golam's joint and several bad

faith.

## COUNT II

## VIOLATION OF THE LANHAM ACT

34.

Plaintiffs reallege and reincorporates the allegations contained in Paragraphs 1 through

33 verbatim as if fully set forth herein.

35.

This is an action for, among other counts, trademark and trade dress infringement under

15 U.S.C. § 1125.

36.

Pursuant to Section 8(A)(1) of the Franchise Agreements, Defendants GMD and Golam

jointly and severally acknowledged "that ownership of all right, title and interest to the System

and the Marks are and shall remain vested solely in Company and/or Global Cellular, Inc. and

FRANCHISEE disclaims any right, title or interest therein or the good will derived therefrom."

37.

The adoption and use of the name CellAxs, as a direct competitor in the sale of cellular telephone accessories, creates a likelihood of consumer confusion deception, and mistake, in violation of 15 U.S.C. § 1125(a).

38.

Upon information and belief, Rafik has a pecuniary interest in CellAxs.

39.

Upon information and belief, Rafik worked alongside Golam in the formation of the CellAxs system.

40.

Upon information and belief, Rafik worked alongside Golam in creating the CellAxs name.

41.

Upon information and belief, Rafik worked alongside Golam in copying the Trade Dress Items to be used in the CellAxs system.

42.

The adoption and use by Defendants of the CellAxs name, Trade Dress Items, and unauthorized sale of Cellairis® branded products, creates a likelihood of consumer confusion deception, and mistake, in violation of 15 U.S.C. § 1125(a).

43.

By Defendants' joint and several conduct, including but not limited to their unauthorized and deceptive use of the CellAxs name, Defendants, jointly and severally, will receive the benefit of Cellairis' goodwill achieved over time and at great labor and expense.

44.

By Defendants' joint and several conduct, including but not limited to their unauthorized and deceptive use of the Trade Dress Items for the CellAxs locations, Defendants, jointly and severally, will receive the benefit of Cellairis' goodwill achieved over time and at great labor and expense.

45.

By Defendants' joint and several conduct, including but not limited to their improper, unauthorized and deceptive use of selling Cellairis® branded products from the CellAxs locations, Defendants, jointly and severally, will receive the benefit of Cellairis' goodwill achieved over time and at great labor and expense.

46.

Defendants' joint and several use of the CellAxs name will unjustly enrich Defendants and will place Cellairis' valuable reputation and goodwill in the hands of Defendants, over whom Cellairis has no control.

47.

Defendants' joint and several uses of the Trade Dress Items for the CellAxs locations will unjustly enrich Defendants and will place Cellairis' valuable reputation and goodwill in the hands of Defendants, over whom Cellairis has no control.

48.

Defendants' joint and several sale of Cellairis® branded products from the CellAxs locations will unjustly enrich Defendants and will place Cellairis' valuable reputation and goodwill in the hands of Defendants, over whom Cellairis has no control.

49.

Defendants' joint and several uses of the CellAxs name falsely indicates to the consuming public that Defendants' CellAxs locations are related, connected, sponsored, or affiliated with Cellairis' franchise System.

50.

Defendants' joint and several use of the Trade Dress Items for the CellAxs locations falsely indicates to the consuming public that Defendants' CellAxs locations are related, connected, sponsored, or affiliated with Cellairis' franchise System.

51.

Defendants' joint and several sale of the Cellairis® branded products from the CellAxs locations falsely indicates to the consuming public that Defendants' CellAxs locations are related, connected, sponsored, or affiliated with Cellairis' franchise System.

52.

Defendants' joint and several activities are likely to cause consumer confusion, mistake, and deception between Cellairis' franchise System and Defendants CellAxs locations.

53.

Defendants' joint and several conduct constitutes a false description or representation of Cellairis' franchise System and Defendants' CellAxs locations, and is unlawful under 15 U.S.C. § 1125(a).

54.

Upon information and belief, Defendants' joint and several infringements were, and continue to be willful.

55.

Upon information and belief, Defendants will, if not enjoined by this Court, continue their acts of trade dress infringement set forth above, which acts have caused, and will continue to cause Cellairis immediate and irreparable harm.

56.

Pursuant to 15 U.S.C. § 1116 and O.C.G.A. § 9-11-65(a), Cellairis is entitled to an Order of this Court enjoining Defendants' joint and several unlawful conduct from taking the following actions since Cellairis has no adequate remedy at law:

    A.    Operating the CellAxs system;

    B.    Operating under the CellAxs name;

    C.    Utilizing any of the Trade Dress Items;

    D.    Utilizing any of Cellairis' Trade Secrets;

    E.    Utilizing any Cellairis' Confidential Information;

    F.    Selling Cellairis® branded products from CellAxs locations.

57.

Pursuant to 15 U.S.C. § 1117(a), Cellairis is entitled to a judgment for Defendants' joint and several profits in an amount to be proven at trial, Cellairis' reasonable attorney's fees, and Cellairis' costs of the action, and the total amount shall be trebled to an amount to be decided by this Court.

58.

Based on Defendants' joint and several willful infringement of Cellairis' trademarked name and Cellairis' Trade Dress Items, and pursuant to 15 U.S.C. § 1117(b), Cellairis is entitled to treble damages awarded by this Court, which shall be proven at trial plus prejudgment interest.

## COUNT III

## VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT

59.

Plaintiffs reallege and reincorporate the allegations contained in Paragraphs 1 through 58 verbatim as if fully set forth herein.

60.

Pursuant to Section 13(D) of the Franchise Agreements, Defendants GMD and Golam agreed that the Franchise Agreements should "be governed and construed under and in accordance with the laws of the State of Georgia."

61.

As a result of Georgia law applying to this cause of action, this is also an action for trade dress infringement under Georgia's Uniform Deceptive Trade Practices Act pursuant to O.C.G.A § 10-1-370 *et seq.*

62.

The adoption and use of the CellAxs name by Defendants constitutes a deceptive trade practice in violation of O.C.G.A. § 10-1-372.

63.

The adoption and use of the Trade Dress Items for the CellAxs locations by Defendants constitutes a deceptive trade practice in violation of O.C.G.A. § 10-1-372.

64.

The unauthorized sale and use of the Cellairis® branded products from the CellAxs locations by Defendants constitutes a deceptive trade practice in violation of O.C.G.A. § 10-1-372.

65.

By Defendants' joint and several conduct, including but not limited to their unauthorized use of the CellAxs name, Defendants, jointly and severally, will receive the benefit of Cellairis' goodwill achieved over time and at great labor and expense.

66.

By Defendants' joint and several conduct, including but not limited to their unauthorized use of the Trade Dress Items for the CellAxs locations, Defendants, jointly and severally, will receive the benefit of Cellairis' goodwill achieved over time and at great labor and expense.

67.

By Defendants' joint and several conduct, including but not limited to their unauthorized sale of Cellairis® branded products from the CellAxs locations, Defendants, jointly and severally, will receive the benefit of Cellairis' goodwill achieved over time and at great labor and expense.

68.

Defendants' joint and several use of the CellAxs name will unjustly enrich Defendants and will place Cellairis' valuable reputation and goodwill in the hands of Defendants, over whom Cellairis has no control.

69.

Defendants' joint and several use of the Trade Dress Items for the CellAxs locations will unjustly enrich Defendants and will place Cellairis' valuable reputation and goodwill in the hands of Defendants, over whom Cellairis has no control.

70.

Defendants' joint and several unauthorized sale of Cellairis® branded products from the CellAxs locations will unjustly enrich Defendants and will place Cellairis' valuable reputation and goodwill in the hands of Defendants, over whom Cellairis has no control.

71.

Pursuant to O.C.G.A. § 10-1-372(b), "[i]n order to prevail in an action under this part, a complainant need not prove competition between the parties or actual confusion or misunderstanding."

72.

Defendants' joint and several use of the CellAxs name and the Trade Dress Items for the CellAxs locations as well as the unauthorized sale of Cellairis® branded products causes a likelihood of confusion or of misunderstanding as to the source of Defendants' CellAxs locations, or a likelihood of confusion or of misunderstanding as to the sponsorship, approval, or certification of Defendants use by Cellairis.

73.

Defendants' joint and several activities causes a likelihood of confusion or of misunderstanding as to the affiliation, connection, or association with Cellairis' franchise System and a likelihood of confusion or of misunderstanding as to the certification by Cellairis of Defendants' CellAxs locations.

74.

Upon information and belief, Defendants' joint and several infringements were, and continue to be willful.

75.

Upon information and belief, Defendants will, if not enjoined by this Court, continue its acts of trademark and trade dress infringement set forth above, which acts have caused, and will continue to cause Cellairis immediate and irreparable harm.

76.

Pursuant to O.C.G.A. § 10-1-373, Cellairis is entitled to an Order of this Court enjoining Defendants' jointly and severally from taking the following actions since Cellairis has no adequate remedy at law:

    A.    Operating the CellAxs system;

    B.    Operating under the CellAxs name;

    C.    Utilizing any of the Trade Dress Items;

    D.    Utilizing any of Cellairis' Trade Secrets;

    E.    Utilizing any Cellairis' Confidential Information;

    F.    Selling Cellairis® branded products from CellAxs locations.

77.

Pursuant to O.C.G.A. § 10-1-373(b), Cellairis is entitled to costs.

78.

Pursuant to O.C.G.A. § 10-1-373(b)(2) and based on Defendants' joint and several willful infringement of Cellairis' trademarked name and Trade Dress Items Cellairis is entitled to an award of its attorney fees.

## COUNT IV

## FEDERAL UNFAIR COMPETITION

### 79.

Plaintiffs reallege and reincorporate the allegations contained in Paragraphs 1 through 78 verbatim as if fully set forth herein.

### 80.

Defendants' unauthorized use of Cellairis' trademarked name by using the CellAxs name, Defendants' unauthorized use of Cellairis' Trade Dress Items, Defendants' unauthorized sale of Cellairis® branded products, procedures, systems, and other methods and items relating to Cellairis'® franchise System, constitutes false designation of origin, false or misleading description of fact, and false or misleading representations of fact, which are likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association between Defendants CellAxs locations and Cellairis, or as to the origin, sponsorship, or approval of the goods or services being offered by Defendants CellAxs locations, or as to Cellairis' approval of Defendants' CellAxs commercial activities.

### 81.

Defendants' conduct violates section 43(a) of the Lanham Act located at 15 U.S.C. § 1125(a).

### 82.

Cellairis reserves the right to proffer evidence and seek an award of punitive damages in an amount to be determined by the enlightened conscious of the trier of fact, but in no event less than $500,000.

83.

Defendants' joint and several conduct is causing irreparable injury to Cellairis' reputation and goodwill, which will continue unabated unless enjoined by this Court.

84.

As a direct and proximate result of Defendants' joint and several conduct, Cellairis has sustained actual damages in an amount to be determined at trial, together with reasonable attorney's fees, expenses of litigation, and all costs of court.

## COUNT V

## COMMON LAW MISAPPROPRIATION AND

## COMMON LAW UNFAIR COMPETITION

85.

Plaintiffs reallege and reincorporate the allegations contained in Paragraphs 1 through 84 verbatim as if fully set forth herein.

86.

Defendants' joint and several aforesaid acts constitute misappropriation of Cellairis' Trade Dress Items and goodwill and are in violation of Georgia's Common Law of Unfair Competition since Defendants' infringement is likely to cause confusion, mistake, and/or deception.

87.

Defendants' joint and several aforesaid acts constitute misappropriation of Cellairis' trademarked name and goodwill and are in violation of Georgia's Common Law of Unfair Competition since Defendants' infringement is likely to cause confusion, mistake, and/or deception.

88.

Defendants' joint and several conduct described herein is intentional and willful.

89.

As a direct and proximate result of Defendants' joint and several conduct, Cellairis has sustained actual damages in an amount to be determined at trial, together with reasonable attorney's fees, expenses of litigation, and all costs of court.

90.

Cellairis reserves the right to proffer evidence and seek an award of punitive damages in an amount to be determined by the enlightened conscious of the trier of fact, but in no event less than $500,000.

91.

Absent the entry of an injunction by this Court, Cellairis will continue to suffer irreparable harm to its goodwill and reputation and this Court should issue an Order enjoining the Defendants, jointly and severally from taking the following actions since Cellairis has no adequate remedy at law:

A.    Operating the CellAxs system;

B.    Operating under the CellAxs name;

C.    Utilizing any of the Trade Dress Items;

D.    Utilizing any of Cellairis' Trade Secrets;

E.    Utilizing any Cellairis' Confidential Information;

F.    Selling Cellairis® branded products from CellAxs locations.

## COUNT VI

## BREACH OF FRANCHISE AGREEMENTS FOR

## SELLING UNAUTHORIZED PRODUCT

## AGAINST DEFENDANTS GMD AND GOLAM

92.

Plaintiffs reallege and reincorporate the allegations contained in Paragraphs 1 through 91 verbatim as if fully set forth herein.

93.

Pursuant to section 5(C) of the Franchise Agreements, GMD was obligated to purchase all of its Products from Global.

94.

GMD violated the Franchise Agreements by selling unapproved products at the Locations.

95.

Upon information and belief GMD is selling counterfeit unlicensed goods in Cellairis® packaging.

96.

Upon information and belief GMD is selling counterfeit unlicensed goods at the Locations.

97.

Global has sustained additional actual damages for its lost sales of authorized goods for which GMD has substituted and sold unauthorized goods.

98.

GMD's unilateral and wrongful default has caused Global damages since Global will no longer receive profits from GMD for the period remaining under the Franchise Agreements.

99.

Pursuant to the Personal Guaranty, Golam is bound by the obligations of the Franchise Agreements.

100.

Section 13(K) of the Franchise Agreements state, "In any litigation to enforce the terms of this Agreement, all costs and all attorney's fees (including those incurred on appeal) incurred as a result of the legal action shall be paid to the prevailing party by the other party."

101.

As a direct and proximate result of Defendants GMD and Golam's joint and several breaches of the Franchise Agreements, Global is entitled to the present value of Global's lost future profits in an amount to be determined at trial, plus prejudgment interest of 18% per annum, reasonable attorney's fees, expenses of litigation, and all costs of court.

102.

Defendants GMD and Golam, jointly and severally, acting in bad faith, have been unnecessarily and stubbornly litigious and have caused Global unnecessary trouble and expense for which Global is entitled to recover from Defendants GMD and Golam, jointly and severally, reasonable attorney's fees and all expenses of litigation.

103.

Defendants GMD and Golam's joint and several conduct and omissions complained of hereinabove, evidence an entire want of care so as to raise the presumption of Defendants GMD

and Golam's joint and several conscious indifference to the consequences of their acts, conduct, and omissions, consequently Global is entitled to reasonable attorney's fees and expenses of litigation of bringing this action due to Defendants GMD and Golam's joint and several bad faith.

## COUNT VII

## BREACH OF FRANCHISE AGREEMENTS FOR UNDER PAYMENT OF ROYALTIES AGAINST DEFENDANTS GMD AND GOLAM

104.

Plaintiffs reallege and reincorporate the allegations contained in Paragraphs 1 through 103 verbatim as if fully set forth herein.

105.

As consideration for Cellairis granting the franchises to GMD, GMD agreed to pay a "**Royalty**" for each Business Unit as that term is defined in Section 3(A) of each of the Franchise Agreements, equal to 5% of Gross Sales (as defined by the Franchise Agreements) to be paid monthly based on the preceding month's Gross Sales.

106.

GMD has failed to pay the proper amount of Royalties for all of the Locations in an amount to be proven at trial.

107.

Section 3(C) of the Franchise Agreements states, "Any Royalty not paid when due shall bear interest and late charge at the maximum rate allowed by Georgia law or, if no maximum rate relating to this transaction is in effect in the State of Georgia, 18% per annum."

108.

In accordance with O.C.G.A § 7-4-2 (a)(1)(A) and section 3(C) of the Franchise Agreements, GMD owes interest on the unpaid Royalties for the Locations at the rate of 18% per annum.

109.

GMD's unilateral and wrongful default has caused Cellairis damages since Cellairis will no longer receive Royalties for the period remaining under the Franchise Agreements.

110.

Pursuant to the Personal Guaranty, Golam is bound by the obligations of the Franchise Agreements.

111.

Section 13(K) of the Franchise Agreements state, "In any litigation to enforce the terms of this Agreement, all costs and all attorney's fees (including those incurred on appeal) incurred as a result of the legal action shall be paid to the prevailing party by the other party."

112.

As a direct and proximate result of Defendants GMD and Golam's joint and several breach of the Franchise Agreements, Cellairis has sustained actual damages in an amount to be proven at trial, together with the present value of Cellairis' lost future Royalties in an amount to be proven at trial, plus prejudgment interest of 18% per annum, reasonable attorney's fees, expenses of litigation, and all costs of court.

113.

Defendants GMD and Golam, jointly and severally, acting in bad faith, have been unnecessarily and stubbornly litigious and have caused Cellairis unnecessary trouble and

expense for which Cellairis is entitled to recover from Defendants GMD and Golam, jointly and severally, reasonable attorney's fees and all expenses of litigation.

114.

Defendants GMD and Golam's joint and several conduct and omissions complained of hereinabove, evidence an entire want of care so as to raise the presumption of Defendants GMD and Golam's joint and several conscious indifference to the consequences of their acts, conduct, and omissions, consequently Cellairis is entitled to reasonable attorney's fees and expenses of litigation of bringing this action due to Defendants GMD and Golam's joint and several bad faith.

**COUNT VIII**

**BREACH OF FRANCHISE AGREEMENTS FOR FAILING TO PROVIDE REPORTS**

**AGAINST DEFENDANTS GMD AND GOLAM**

115.

Plaintiffs reallege and reincorporate the allegations contained in Paragraphs 1 through 114 verbatim as if fully set forth herein.

116.

Pursuant to Section 7(D) of the Franchise Agreements, GMD was obligated to provide monthly reports to Cellairis.

117.

Specifically, Section 7(D) provides that "FRANCHISEE shall furnish to Company, by the tenth (10th) day of each month, a statement relating to its Gross Sales for the preceding month."

118.

GMD violated the Franchise Agreements by failing to provide the monthly reports.

119.

Specifically, Section 10(A)(8) provides for an event of default resulting in immediate termination if "FRANCHISEE (i) fails to submit any financial or other information required by this Agreement or (ii) knowingly submits a financial statement that understates Gross Sales."

120.

Pursuant to the Personal Guaranty, Golam is bound by the obligations of the Franchise Agreements.

121.

Section 13(K) of the Franchise Agreements state, "In any litigation to enforce the terms of this Agreement, all costs and all attorney's fees (including those incurred on appeal) incurred as a result of the legal action shall be paid to the prevailing party by the other party."

122.

As a direct and proximate result of Defendants GMD and Golam's joint and several breaches of the Franchise Agreements, Cellairis is entitled to damages in an amount proven at trial, plus prejudgment interest of 18% per annum, reasonable attorney's fees, expenses of litigation, and all costs of court.

123.

Defendants GMD and Golam, jointly and severally, acting in bad faith, have been unnecessarily and stubbornly litigious and have caused Cellairis unnecessary trouble and expense for which Cellairis is entitled to recover from Defendants GMD and Golam, jointly and severally, reasonable attorney's fees and all expenses of litigation.

124.

Defendants GMD and Golam's joint and several conduct and omissions complained of hereinabove, evidence an entire want of care so as to raise the presumption of Defendants GMD and Golam's joint and several conscious indifference to the consequences of their acts, conduct, and omissions, consequently Cellairis is entitled to reasonable attorney's fees and expenses of litigation of bringing this action due to Defendants GMD and Golam's joint and several bad faith.

## COUNT IX

## EQUITABLE ACCOUNTING

## AGAINST DEFENDANT GMD AND GOLAM

125.

Plaintiffs reallege and reincorporate the allegations contained in Paragraphs 1 through 124 verbatim as if fully set forth herein.

126.

Cellairis has sustained actual damages for its lost sales of authorized goods for which GMD has sold unauthorized goods.

127.

Additionally, Cellairis has lost Royalties due to GMD's unauthorized sales.

128.

Additionally, Global has lost future profits for the period remaining under the Franchise Agreements because of GMD's unilateral and wrongful default.

129.

The amount of lost profits and Royalties owed by Defendants, jointly and severally, to Plaintiffs cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements, and books from GMD.

130.

Pursuant to the Personal Guaranty, Golam is bound by the obligations of the Franchise Agreements.

131.

Therefore, Plaintiffs are entitled to an equitable accounting of GMD's finances at Defendants GMD and Golam's cost and expense.

## COUNT X

## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

## AGAINST DEFENDANTS GOLAM AND RAFIK

132.

Plaintiffs reallege and reincorporate the allegations contained in Paragraphs 1 through 131 verbatim as if fully set forth herein.

133.

Defendants Golam and Rafik jointly and severally acted improperly and without privilege when at the time of opening a CellAxs location they directed and encouraged various mall developers that provide the leases for the Cellairis® franchise System (the **"Mall Developers"**) to terminate a Cellairis franchised location in the same mall.

134.

Defendants Golam and Rafik's joint and several actions were purposefully taken with malice and with the intent to injure when they directed the Mall Developers to terminate the Cellairis franchised location.

135.

Defendants Golam and Rafik's joint and several actions caused Cellairis to no longer be able to sell franchised units when Defendants Golam and Rafik directed the Mall Developers to terminate the Cellairis Business Unit thereby making CellAxs the only cellular telephone accessory store in the mall.

136.

As a result of Defendants Golam and Rafik's joint and several actions, Plaintiffs suffered damage.

137.

By virtue of the above, Defendants Golam and Rafik, jointly and severally, are indebted to Plaintiffs due to their tortious interference with Plaintiffs' contractual and business relations.

138.

Defendants Golam and Rafik acting jointly and severally and in bad faith, have been unnecessarily and stubbornly litigious and have caused Plaintiffs unnecessary trouble and expense for which Plaintiffs are entitled to recover from Defendants Golam and Rafik, jointly and severally, expenses of litigation.

139.

Defendants Golam and Rafik's joint and several acts, conduct and omissions complained of hereinabove evidence an entire want of care so as to raise the presumption of Defendants

Golam and Rafik's joint and several conscious indifference to the consequences of their acts, conduct and omissions, consequently Plaintiffs are entitled to reasonable attorneys' fees and expenses of litigation of bringing this action plus exemplary or punitive damages due to Defendants Golam and Rafik's joint and several bad faith in an amount to be determined by the enlightened conscious of the trier of fact, but in no event less than $500,000.

140.

By virtue of the above, Defendants Golam and Rafik are jointly and severally indebted to Plaintiffs in such amount as is shown by the evidence at trial, together with reasonable attorney's fees, expenses of litigation, costs of court and interest.

## COUNT XI

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

## AGAINST DEFENDANTS GOLAM AND RAFIK

141.

Plaintiffs reallege and reincorporate the allegations contained in Paragraphs 1 through 140 verbatim as if fully set forth herein.

142.

Defendants Golam and Rafik were strangers to the contractual relationships between Plaintiffs and the Mall Developers.

143.

Defendants Golam and Rafik intentionally and without privilege interfered with the existing contractual rights and relationships of Plaintiffs and the Mall Developers.

144.

Defendants Golam and Rafik's interference with the contractual relationships between Plaintiffs and the Mall Developers was without legal justification or excuse.

145.

Plaintiffs suffered severe financial damages as a result of Defendants Golam and Rafik's interference with these contractual relationships.

146.

Defendants Golam and Rafik acting jointly and severally and in bad faith, have been unnecessarily and stubbornly litigious and have caused Plaintiffs unnecessary trouble and expense for which Plaintiffs are entitled to recover from Defendants Golam and Rafik, jointly and severally, expenses of litigation.

147.

Defendants Golam and Rafik's joint and several acts, conduct and omissions complained of hereinabove evidence an entire want of care so as to raise the presumption of Defendants Golam and Rafik's joint and several conscious indifference to the consequences of their acts, conduct and omissions, consequently Plaintiffs are entitled to reasonable attorneys' fees and expenses of litigation of bringing this action plus exemplary or punitive damages due to Defendants Golam and Rafik's joint and several bad faith in an amount to be determined by the enlightened conscious of the trier of fact, but in no event less than $500,000.

148.

By virtue of the above, Defendants Golam and Rafik are jointly and severally indebted to Plaintiffs in such amount as is shown by the evidence at trial, together with reasonable attorney's fees, expenses of litigation, costs of court and interest.

## COUNT XII

## UNJUST ENRICHMENT

149.

Plaintiffs reallege and reincorporate the allegations contained in Paragraphs 1 through 148 verbatim as if fully set forth herein.

150.

Defendants jointly and severally have received substantial benefits and value for which Cellairis is receiving nothing in value by Defendants conducting the following activities:

    (a)   Operating a competing system under the name CellAxs;

    (b)   Performing injurious acts against Cellairis' goodwill associated with its Marks and System;

    (c)   Using Cellairis' Trade Dress Items, methods, procedures, trade secrets, confidential information, and techniques associated with the franchise System for the purpose of operating CellAxs locations;

    (d)   Selling Cellairis® branded products from CellAxs locations;

    (e)   Failing to abide by the terms and conditions of the Franchise Agreements;

    (f)   Failing to abide by the terms and conditions of the Sublease Agreements; and

    (g)   Failing to abide by the terms and conditions under the Personal Guaranty.

151.

Cellairis is no longer receiving Royalties from Defendants GMD and Golam for the use of Cellairis system and component Marks and Trade Dress Items.

152.

The circumstances make it unfair for Defendants GMD and Golam to jointly and severally retain any benefits conferred by Cellairis without fairly compensating Cellairis by paying Cellairis Royalties or any other fees that would be due and owing if Defendants GMD and Golam were still franchisees under the Cellairis® System.

153.

As a direct and proximate result of Defendants' joint and several actions, Cellairis has sustained actual damages, including the present value of Cellairis lost future profits in an amount to be determined at trial, together with reasonable attorney's fees, expenses of litigation, and all costs of court.

154.

As a direct result of Defendants' joint and several acts, Cellairis is entitled to recover from Defendants, jointly and severally, all of its actual damages presented at trial, together with reasonable attorney's fees and costs of litigation.

155.

Defendants, acting in bad faith have been unnecessarily and stubbornly litigious and have caused Cellairis unnecessary trouble and expense for which Cellairis is entitled to recover from Defendants, jointly and severally, its reasonable attorney's fees and all expenses of litigation.

## COUNT XIII

## CONVERSION

156.

Plaintiffs reallege and reincorporate the allegations contained in Paragraphs 1 through 155 as if fully set forth herein.

157.

Defendants, jointly and severally, converted Cellairis' trademarked name for their own pecuniary benefit.

158.

Defendants, jointly and severally, converted Cellairis' Trade Dress Items for their own pecuniary benefit.

159.

Defendants, jointly and severally, converted Cellairis' procedures, systems, and other methods and items relating to the Cellairis® franchise System.

160.

Defendants continued exercise of dominion over Cellairis' trademarked name, Trade Dress Items, procedures, systems, and other methods and items relating to the Cellairis® franchise System (collectively referred to as **"Cellairis' Assets"**) are unauthorized and wrongful.

161.

Defendants' unauthorized retention of Cellairis' Assets has deprived Cellairis of the benefit of use and ownership.

162.

Defendants' joint and several acts were contrary and an interference with Cellairis' ownership rights over Cellairis' Assets and constituted a conversion.

163.

By virtue of above, Defendants, jointly and severally, are indebted to Cellairis in such amount as is shown by the evidence at trial.

164.

By virtue of above, Defendants should be restrained and enjoined from using Cellairis' Assets immediately.

165.

Defendants acting jointly and severally and in bad faith, have been unnecessarily and stubbornly litigious and have caused Plaintiffs unnecessary trouble and expense for which Plaintiffs are entitled to recover from Defendants, jointly and severally, expenses of litigation.

166.

Defendants' joint and several acts, conduct and omissions complained of hereinabove evidence an entire want of care so as to raise the presumption of Defendants' joint and several conscious indifference to the consequences of their acts, conduct and omissions, consequently Plaintiffs are entitled to reasonable attorneys' fees and expenses of litigation of bringing this action plus exemplary or punitive damages due to Defendants' joint and several bad faith in an amount to be determined by the enlightened conscious of the trier of fact, but in no event less than $500,000.

167.

By virtue of the above, Defendants are jointly and severally indebted to Plaintiffs in such amount as is shown by the evidence at trial, together with reasonable attorney's fees, expenses of litigation, costs of court and interest.

## COUNT XIV

## CONSTRUCTIVE TRUST

### 168.

Plaintiffs reallege and reincorporate the allegations contained in Paragraphs 1 through 167 verbatim as if fully set forth herein.

### 169.

Cellairis entered into the Franchise Agreements with GMD for the ownership and operation of 15 Cellairis franchises.

### 170.

Cellairis also entered into 15 Personal Guaranties to ensure that all of the obligations, both monetary and contractual, would be performed by Golam.

### 171.

Cellairis fully performed under the Franchise Agreements.

### 172.

Defendants GMD and Golam, jointly and severally, have failed to abide by the specific provisions of the Franchise Agreements and as a result, Defendants maintain over 60 CellAxs locations which sell cellular telephone accessories while utilizing Cellairis' Trade Dress Items, Marks, System tools, operations, and procedures.

### 173.

Defendants, jointly and severally, are trading on Cellairis' Marks and/or Trade Dress, as well as, utilizing methods, plans, operations, and other features of Cellairis'® System in the furtherance of Defendants' business operations for their own pecuniary benefits.

174.

Defendant Golam has also failed to abide by the terms and conditions of the Personal Guaranty by not abiding by all of the provisions contained within the Franchise Agreements.

175.

By virtue of Defendants' actions in utilizing Cellairis'® System without paying Cellairis Royalties, without purchasing all of their product from Global, and without paying other fees which are promulgated within the Franchise Agreement and guaranteed pursuant to the Personal Guaranty, under the equity powers of this Court, Plaintiffs are entitled to impress a constructive trust on a percentage of Defendants' profits that it wrongfully kept from Plaintiffs.

176.

Additionally, Plaintiffs are entitled to reasonable attorneys' fees, expenses of litigation and all costs of court.

## COUNT XV

## EQUITABLE LIEN

177.

Plaintiffs reallege and reincorporate the allegations contained in Paragraphs 1 through 176 verbatim as if fully set forth herein.

178.

Cellairis entered into the Franchise Agreements with GMD for the ownership and operation of 15 Cellairis franchises.

179.

Cellairis also entered into 15 Personal Guaranties to ensure that all of the obligations, both monetary and contractual, would be performed by Golam.

180.

Cellairis fully performed under the Franchise Agreements.

181.

Defendants GMD and Golam, jointly and severally, have failed to abide by the specific provisions of the Franchise Agreements and as a result, Defendants maintain over 60 CellAxs locations which sell cellular telephone accessories while utilizing Cellairis' Trade Dress Items, Marks, System tools, operations, and procedures.

182.

Defendants, jointly and severally, are trading on Cellairis' Marks and/or Trade Dress, as well as, utilizing methods, plans, operations, and other features of Cellairis'® System in the furtherance of Defendants' business operations for their own pecuniary benefits.

183.

Defendant Golam has also failed to abide by the terms and conditions of the Personal Guaranty by not abiding by all of the provisions contained within the Franchise Agreements.

184.

By virtue of Defendants' actions in utilizing Cellairis'® System without paying Cellairis Royalties, without purchasing all of their product from Global, and without paying other fees which are promulgated within the Franchise Agreement and guaranteed pursuant to the Personal Guaranty, under the equity powers of this Court, Plaintiffs are entitled to impress an equitable lien on a percentage of Defendants' profits that it wrongfully kept from Plaintiffs.

185.

Additionally, Plaintiffs are entitled to reasonable attorneys' fees, expenses of litigation and all costs of court.

COUNT XVI

THEFT BY TAKING

AGAINST DEFENDANTS GOLAM AND RAFIK

186.

Plaintiffs reallege and reincorporate the allegations contained in Paragraphs 1 through 185 verbatim as if fully set forth herein.

187.

Pursuant to O.C.G.A. § 16-8-2, "a person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."

188.

O.C.G.A. § 51-10-6 provides that any owner of personal property shall be authorized to bring a civil action to recover damages from any person who willfully damages the owner's personal property or who commits a theft as defined in Article 1 of Chapter 8 of Title 16 involving the owner's personal property.

189.

Defendants Golam and Rafik committed the civil offense of theft by taking when they converted the Cellairis Assets by y becoming a Cellairis franchisee with the intent to copy the franchised system and utilize the trademark and Trade Dress Items.

190.

To date, Defendants Golam and Rafik have not stopped using any of the Cellairis Assets and continue to profit by utilizing the Cellairis Assets.

191.

As a direct result of Defendants Golam and Rafik's wanton, willful, fraudulent, and deliberate acts, Plaintiffs have sustained and are entitled to recover from Defendants Golam and Rafik, jointly and severally, actual damages in an amount to be proven at trial, together with punitive damages in an amount to be determined by the trier of fact, but in no event less than $500,000, reasonable attorney's fees, expenses of litigation, and all costs of court.

192.

Defendants Golam and Rafik have acted in bad faith, have been unnecessarily and stubbornly litigious, and have caused Plaintiffs unnecessary trouble and expense, for which Plaintiffs are entitled to recover from Defendants Golam and Rafik, jointly and severally, their reasonable attorney's fees and all expenses of litigation.

## COUNT XVII

### THEFT BY DECEPTION

### AGAINST DEFENDANTS GOLAM AND RAFIK

193.

Plaintiffs reallege and reincorporate the allegations contained in Paragraphs 1 through 192 verbatim as if fully set forth herein.

194.

Pursuant to O.C.G.A. § 16-8-3, "a person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property."

195.

O.C.G.A. § 51-10-6 provides that any owner of personal property shall be authorized to bring a civil action to recover damages from any person who willfully damages the owner's personal property or who commits a theft as defined in Article 1 of Chapter 8 of Title 16 involving the owner's personal property.

196.

Defendants Golam and Rafik committed the civil offense of theft by deception when they converted the Cellairis Assets by becoming a Cellairis franchisee with the intent to copy the franchised system and utilize the trademark and Trade Dress Items.

197.

To date, Defendants Golam and Rafik have not stopped using any of the Cellairis Assets and continue to profit by utilizing the Cellairis Assets.

198.

As a direct result of Defendants Golam and Rafik's wanton, willful, fraudulent, and deliberate acts, Plaintiffs have sustained and are entitled to recover from Defendants Golam and Rafik actual damages in an amount to be proven at trial, together with punitive damages in an amount to be determined by the trier of fact, but in no event less than $500,000, reasonable attorney's fees, expenses of litigation, and all costs of court.

199.

Defendants Golam and Rafik have acted in bad faith, have been unnecessarily and stubbornly litigious, and have caused Plaintiffs unnecessary trouble and expense, for which Plaintiffs are entitled to recover from Defendants Golam and Rafik their reasonable attorney's fees and all expenses of litigation.

## COUNT XVIII

## THEFT BY CONVERSION

## AGAINST DEFENDANTS GOLAM AND RAFIK

### 200.

Plaintiffs reallege and reincorporate the allegations contained in Paragraphs 1 through 199 verbatim as if fully set forth herein.

### 201.

Pursuant to O.C.G.A. § 16-8-4,

> a person commits the offense of theft by conversion when, having lawfully obtained funds or other property of another . . . under an agreement or other known legal obligation to make a specified application of such funds or a specified disposition of such property, he knowingly converts the funds of property to his own use in violation of the agreement or legal obligation. This Code section applies whether the application or disposition is to be made from the funds or property of another or from the accused's own funds or property in equivalent amount when the agreement contemplates that the accused may deal with the funds or property of another as his own.

### 202.

O.C.G.A. § 51-10-6 provides that any owner of personal property shall be authorized to bring a civil action to recover damages from any person who willfully damages the owner's personal property or who commits a theft as defined in Article 1 of Chapter 8 of Title 16 involving the owner's personal property.

### 203.

Defendants Golam and Rafik committed the civil offense of theft by conversion when they converted the Cellairis Assets by becoming a Cellairis franchisee with the intent to copy the franchised system and utilize the trademark and Trade Dress Items.

204.

To date, Defendants Golam and Rafik have not stopped using any of the Cellairis Assets and continue to profit by utilizing the Cellairis Assets.

205.

As a direct result of Defendants Golam and Rafik's wanton, willful, fraudulent, and deliberate acts, Plaintiffs have sustained and are entitled to recover from Defendants Golam and Rafik actual damages in an amount to be proven at trial, together with punitive damages in an amount to be determined by the trier of fact, but in no event less than $500,000, reasonable attorney's fees, expenses of litigation, and all costs of court.

206.

Defendants Golam and Rafik have acted in bad faith, have been unnecessarily and stubbornly litigious, and have caused Plaintiffs unnecessary trouble and expense, for which Plaintiffs are entitled to recover from Defendants Golam and Rafik their reasonable attorney's fees and all expenses of litigation.

## COUNT XIX

## BREACH OF PERSONAL GUARANTY AGAINST DEFENDANT GOLAM

207.

Plaintiffs reallege and reincorporate the allegations contained in Paragraphs 1 through 206 verbatim as if fully set forth herein.

208.

Pursuant to the Personal Guaranty, Golam is bound by the obligations of the Franchise Agreements.

209.

Golam has violated the Personal Guaranty by including but not limited to the following acts or omissions:

A. Golam's use of the knowledge, know-how, and expertise that have been created by Cellairis to operate the CellAxs locations;

B. Golam's duplication of the Cellairis® System by opening and operating the CellAxs locations;

C. Golam's improper sale of Cellairis® branded products from the CellAxs locations;

D. Golam's copying of the Trade Dress Items;

E. Golam's utilization of Cellairis' trade secrets to open and operate the CellAxs units;

F. Golam's utilization of Cellairis' confidential information to open and operate the CellAxs units;

G. Golam's violation of the Franchise Agreements by selling unapproved products at the Locations;

H. Upon information and belief Golam's sale of counterfeit unlicensed goods in Cellairis® packaging;

I. Upon information and belief, Golam's sale of counterfeit unlicensed goods at the Locations.

J. Golam's failure to pay the proper amount of Royalties for all of the Locations; and

K. Golam's failure to provide monthly reports.

210.

Section 13(K) of the Franchise Agreements state, "In any litigation to enforce the terms of this Agreement, all costs and all attorney's fees (including those incurred on appeal) incurred as a result of the legal action shall be paid to the prevailing party by the other party."

211.

As a direct and proximate result of Defendant Golam's breaches of the Personal Guaranty, Plaintiffs are entitled actual damages in an amount to be determined at trial, plus prejudgment interest of 18% per annum, reasonable attorney's fees, expenses of litigation, and all costs of court.

212.

Defendant Golam, acting in bad faith, has been unnecessarily and stubbornly litigious and has caused Plaintiffs unnecessary trouble and expense for which Plaintiffs are entitled to recover from Defendant Golam reasonable attorney's fees and all expenses of litigation.

213.

Defendant Golam's conduct and omissions complained of hereinabove, evidence an entire want of care so as to raise the presumption of Defendant Golam's conscious indifference to the consequences of his acts, conduct, and omissions, consequently Plaintiffs are entitled to reasonable attorney's fees and expenses of litigation of bringing this action due to Defendant Golam's bad faith.

## COUNT XX

### INJUNCTIVE RELIEF

214.

Plaintiffs reallege and reincorporate the allegations contained in Paragraphs 1 through 213 verbatim as if fully set forth herein.

215.

Pursuant to section 13(C) of the Franchise Agreements, "FRANCHISEE agrees that Company may have a temporary or preliminary injunctive relief without bond . . . ."

216.

Pursuant to O.C.G.A § 9-5-1, this Court may enjoin "a threatened or existing tort, or any other act of a private individual or corporation which is illegal or contrary to equity and good conscience and for which no adequate remedy is provided at law."

217.

Pursuant to O.C.G.A. § 9-11-65(b), a Court may issue an Order restraining any party from acting or failing to act in the interests of equity if there is no legal remedy available.

218.

Defendants' actions, as described above, have caused Plaintiffs irreparable harm for which no adequate remedy is available at law and as such pursuant to section 13(C) of the Franchise Agreement, Plaintiffs may obtain an injunction prohibiting any conduct that violates any of the covenants contained within sections 8(D) and 11 of the Franchise Agreement.

219.

Absent the entry of an injunction by this Court, Cellairis will continue to suffer irreparable harm to its goodwill and reputation and this Court should issue an Order enjoining

the Defendants, jointly and severally from taking the following actions since Cellairis has no adequate remedy at law:

A.   Operating the CellAxs system;

B.   Operating under the CellAxs name;

C.   Utilizing any of the Trade Dress Items;

D.   Utilizing any of Cellairis' Trade Secrets;

E.   Utilizing any Cellairis' Confidential Information;

F.   Selling Cellairis® branded products from CellAxs locations.

WHEREFORE, Plaintiffs pray as follows:

(a)   That Summons issue and that Defendants be served as provided by law;

(b)   As to Count I relating to the Breach of the Franchise Agreements by Copying the Cellairis® System Against Defendants GMD and Golam, Plaintiffs pray for the following:

    (i)   That Defendants GMD and Golam, jointly and severally, be ordered to pay Plaintiffs' actual damages in an amount to be proven at trial, plus prejudgment interest at the rate of 18% per annum;

    (ii)   That Defendants GMD and Golam, jointly and severally, be ordered to pay all costs of the action; and

    (iii)   That Defendants GMD and Golam, jointly and severally, be ordered to pay Plaintiffs' reasonable attorney's fees pursuant to Section 13(K) of the Franchise Agreements.

(c)   As to Count II relating to the Violation of the Lanham Act, Cellairis prays for the following:

(i)     That the elements of Cellairis' trade dress be adjudged protectable and infringed by Defendants, jointly and severally;

(ii)    That Defendants, jointly and severally, be ordered to pay all damages sustained by Cellairis on account of, *inter alia*, Defendants' trade dress infringement and injury to Cellairis' business reputation pursuant to 15 U.S.C. § 1051, *et seq.*;

(iii)   That Defendants, jointly and severally, be ordered to pay profits in an amount to be proven at trial, together with interest, pursuant to 15 U.S.C. § 1117(a);

(iv)    That Defendants, jointly and severally, be ordered to pay Cellairis' sustained damages pursuant to 15 U.S.C. § 1117(a);

(v)     That Defendants, jointly and severally, be ordered to pay Cellairis' reasonable attorney's fees pursuant to 15 U.S.C. § 1117(a);

(vi)    That Defendants, jointly and severally, be ordered to pay Cellairis' costs of the action pursuant to 15 U.S.C. § 1117(a);

(vii)   That Defendants, jointly and severally, be ordered to pay Cellairis treble damages pursuant to 15 U.S.C. § 1117(b), based on Defendants' willful infringement of Cellairis' Trade Dress Items in an amount proven at trial plus prejudgment interest; and

(viii)  That a preliminary and permanent injunction issue against Defendants from taking the following actions:

1.      Operating the CellAxs system;

2.      Operating under the CellAxs name;

      3.    Utilizing any of the Trade Dress Items;

      4.    Utilizing any of Cellairis' Trade Secrets;

      5.    Utilizing any Cellairis' Confidential Information;

      6.    Selling Cellairis® branded products from CellAxs locations.

(d)    As to Count III relating to the Violation of Georgia's Uniform Deceptive Trade Practices Act, Cellairis prays for the following:

    (i)    That Defendants, jointly and severally, be order to pay Cellairis' costs of the action pursuant to O.C.G.A. § 10-1-373(b);

    (ii)    That a preliminary and permanent injunction issue against Defendants, jointly and severally pursuant to O.C.G.A. § 10-1-373 from taking the following actions

      1.    Operating the CellAxs system;

      2.    Operating under the CellAxs name;

      3.    Utilizing any of the Trade Dress Items;

      4.    Utilizing any of Cellairis' Trade Secrets;

      5.    Utilizing any Cellairis' Confidential Information;

      6.    Selling Cellairis® branded products from CellAxs locations;

    (iii)    That Defendants, jointly and severally, be ordered to pay Cellairis' attorney's fees pursuant to O.C.G.A. § 10-1-373(b)(2); and

    (iv)    That Defendants, jointly and severally, be ordered to pay punitive damages in an amount to be determined by the enlightened conscious of the trier of fact, but in no event less than $500,000 for Defendants' willful and intentional use of the Trade Dress Items.

(e)     As to Count IV relating Federal Unfair Competition, Cellairis prays for the following:

    (i)     That a preliminary and permanent injunction issue against Defendants, jointly and severally; and

    (ii)     That Defendants, jointly and severally, be ordered to pay Cellairis' actual damages in an amount to be determined at trial, together with reasonable attorneys' fee, expenses of litigation, and all costs of court.

    (iii)     That Defendants, jointly and severally, be ordered to pay punitive damages in an amount to be determined by the enlightened conscious of the trier of fact, but in no event less than $500,000.

(f)     As to Count V relating to Common Law Misappropriation and Common Law Unfair Competition, Cellairis prays for the following:

    (i)     That a preliminary and permanent injunction issue against Defendants, jointly and severally; and

    (ii)     That Defendants, jointly and severally, be ordered to pay Cellairis' actual damages in an amount to be determined at trial, together with reasonable attorneys' fee, expenses of litigation, and all costs of court.

    (iii)     That Defendants, jointly and severally, be ordered to pay punitive damages in an amount to be determined by the enlightened conscious of the trier of fact, but in no event less than $500,000.

(g)     As to Count VI relating to the Breach of Franchise Agreements for Selling Unauthorized Product Against Defendants GMD and Golam, Plaintiffs pray for the following:

     (i)     That Defendants GMD and Golam, jointly and severally, be ordered to pay Plaintiffs' actual damages including the present value of Global's lost future profits, in the amount to be proven at trial.

     (ii)    That Defendants GMD and Golam, jointly and severally, be ordered to pay all costs of the action; and

     (iii)   That Defendants GMD and Golam, jointly and severally, be ordered to pay Plaintiff's reasonable attorney's fees pursuant to Section 13(K) of the Franchise Agreements.

(h)    As to Count VII relating to the Breach of Franchise Agreements for Under Payment of Royalties Against Defendants GMD and Golam, Cellairis prays for the following:

     (i)     That Defendants GMD and Golam, jointly and severally, be ordered to pay Cellairis' actual damages in an amount to be proven at trial, together with the present value of Cellairis' lost future Royalties in an amount to be proven at trial, plus prejudgment interest at the rate of 18% per annum;

     (ii)    That Defendants GMD and Golam, jointly and severally, be ordered to pay all costs of the action; and

     (iii)   That Defendants GMD and Golam, jointly and severally, be ordered to pay Cellairis' reasonable attorney's fees pursuant to Section 13(K) of the Franchise Agreements.

(i)    As to Count VIII relating to the Breach of Franchise Agreements for Failing to Provide Reports Against Defendants GMD and Golam, Cellairis prays for the following:

    (i)     That Defendants GMD and Golam, jointly and severally, be ordered to pay Cellairis' actual damages in an amount to be proven at trial, plus prejudgment interest at the rate of 18% per annum;

    (ii)    That Defendants GMD and Golam, jointly and severally, be ordered to pay all costs of the action; and

    (iii)   That Defendants GMD and Golam, jointly and severally, be ordered to pay Cellairis' reasonable attorney's fees pursuant to Section 13(K) of the Franchise Agreements.

(j)    As to Count IX relating to the Equitable Accounting Against Defendants GMD and Golam, Cellairis prays for the following:

    (i)     That Defendants GMD and Golam, jointly and severally, be ordered to provide an equitable accounting, at its cost and expense, then disgorgement and restitution of all funds owed to Plaintiffs, together with prejudgment interest at the rate of 18% per annum;

    (ii)    That Defendants GMD and Golam, jointly and severally, be ordered to pay all costs of the action; and

    (iii)   That Defendants GMD and Golam, jointly and severally, be ordered to pay Cellairis' reasonable attorney's fees pursuant to Section 13(K) of the Franchise Agreements.

(k)    As to Count X relating to Tortious Interference with Business Relationship Against Defendants Golam and Rafik, Plaintiffs pray for the following:

(i)   That Defendants Golam and Rafik, jointly and severally, be ordered to pay Plaintiffs' actual damages in an amount to be proven at trial, plus prejudgment interest at the rate of 18% per annum;

(ii)   That Defendants Golam and Rafik, jointly and severally, be ordered to pay punitive damages in an amount to be determined by the enlightened conscious of the trier of fact, but in no event less than $500,000.

(iii)   That Defendants Golam and Rafik, jointly and severally, be ordered to pay all costs of the action; and

(iv)   That Defendants Golam and Rafik, jointly and severally, be ordered to pay Plaintiffs' reasonable attorney's fees pursuant to Section 13(K) of the Franchise Agreements.

(l)   As to Count XI relating to Tortious Interference with Contractual Relations Against Defendants Golam and Rafik, Plaintiffs pray for the following:

(i)   That Defendants Golam and Rafik, jointly and severally, be ordered to pay Plaintiffs' actual damages in an amount to be proven at trial, plus prejudgment interest at the rate of 18% per annum;

(ii)   That Defendants Golam and Rafik, jointly and severally, be ordered to pay punitive damages in an amount to be determined by the enlightened conscious of the trier of fact, but in no event less than $500,000.

(iii)   That Defendants Golam and Rafik, jointly and severally, be ordered to pay all costs of the action; and

(iv)    That Defendants Golam and Rafik, jointly and severally, be ordered to pay Plaintiffs' reasonable attorney's fees pursuant to Section 13(K) of the Franchise Agreements.

(m)    As to Count XII relating to Unjust Enrichment, Plaintiffs pray for the following:

    (i)    That Defendants, jointly and severally, be ordered to pay Plaintiffs' actual damages in the amount to be proven at trial;

    (ii)    That Defendants, jointly and severally, be ordered to pay all costs of the action; and

    (iii)    That Defendants, jointly and severally, be ordered to pay Plaintiffs' reasonable attorney's fees pursuant to Section 13(K) of the Franchise Agreements.

(n)    As to Count XIII relating to Conversion, Plaintiffs pray for the following:

    (i)    That Defendants, jointly and severally, be ordered to pay Plaintiffs' actual damages in an amount to be proven at trial, plus prejudgment interest at the rate of 18% per annum;

    (ii)    That Defendants, jointly and severally, be ordered to pay punitive damages in an amount to be determined by the enlightened conscious of the trier of fact, but in no event less than $500,000.

    (iii)    That Defendants, jointly and severally, be ordered to pay all costs of the action;

    (iv)    That Defendants, jointly and severally, be ordered to pay Plaintiffs' reasonable attorney's fees pursuant to Section 13(K) of the Franchise Agreements; and

(v)   That a preliminary and permanent injunction issue against Defendants, jointly and severally from taking the following actions:

1.   Operating the CellAxs system;

2.   Operating under the CellAxs name;

3.   Utilizing any of the Trade Dress Items;

4.   Utilizing any of Cellairis' Trade Secrets;

5.   Utilizing any Cellairis' Confidential Information;

6.   Selling Cellairis® branded products from CellAxs locations.

(o)   As to Count XIV relating to the imposition of a Constructive Trust, Plaintiffs pray for the following:

(i)   That this Court impress a constructive trust on a percentage of Defendants' joint and several profits that they wrongfully kept from Plaintiffs;

(ii)   That Defendants, jointly and severally, be ordered to pay all costs of the action; and

(iii)   That Defendants, jointly and severally, be ordered to pay Plaintiffs' reasonable attorney's fees pursuant to Section 13(K) of the Franchise Agreements.

(p)   As to Count XV relating to the imposition of an Equitable Lien, Plaintiffs pray for the following:

(i)   That this Court impress an equitable lien on a percentage of Defendants' joint and several profits that it wrongfully kept from Plaintiffs;

(ii)   That Defendants, jointly and severally, be ordered to pay all costs of the action; and

(iii)   That Defendants, jointly and severally, be ordered to pay Plaintiffs' reasonable attorney's fees pursuant to Section 13(K) of the Franchise Agreements.

(q)   As to Count XVI, regarding Theft By Taking Against Defendants Golam and Rafik, Plaintiffs pray for the following:

(i)   That Defendants Golam and Rafik, jointly and severally, be ordered to pay Plaintiffs' actual damages in an amount to be proven at trial, plus prejudgment interest at the rate of 18% per annum;

(ii)   That Defendants Golam and Rafik, jointly and severally, be ordered to pay punitive damages in an amount to be determined by the enlightened conscious of the trier of fact, but in no event less than $500,000.

(iii)   That Defendants Golam and Rafik, jointly and severally, be ordered to pay all costs of the action; and

(iv)   That Defendants Golam and Rafik, jointly and severally, be ordered to pay Plaintiffs' reasonable attorney's fees pursuant to Section 13(K) of the Franchise Agreements.

(r)   As to Count XVII, regarding Theft By Deception Against Defendants Golam and Rafik, Plaintiffs pray for the following:

(i)   That Defendants Golam and Rafik, jointly and severally, be ordered to pay Plaintiffs' actual damages in an amount to be proven at trial, plus prejudgment interest at the rate of 18% per annum;

(ii)    That Defendants Golam and Rafik, jointly and severally, be ordered to pay punitive damages in an amount to be determined by the enlightened conscious of the trier of fact, but in no event less than $500,000.

(iii)    That Defendants Golam and Rafik, jointly and severally, be ordered to pay all costs of the action; and

(iv)    That Defendants Golam and Rafik, jointly and severally, be ordered to pay Plaintiffs' reasonable attorney's fees pursuant to Section 13(K) of the Franchise Agreements.

(s)    As to Count XVIII, regarding Theft By Conversion Against Defendants Golam and Rafik, Plaintiffs pray for the following:

(i)    That Defendants Golam and Rafik, jointly and severally, be ordered to pay Plaintiffs' actual damages in an amount to be proven at trial, plus prejudgment interest at the rate of 18% per annum;

(ii)    That Defendants Golam and Rafik, jointly and severally, be ordered to pay punitive damages in an amount to be determined by the enlightened conscious of the trier of fact, but in no event less than $500,000.

(iii)    That Defendants Golam and Rafik, jointly and severally, be ordered to pay all costs of the action; and

(iv)    That Defendants Golam and Rafik, jointly and severally, be ordered to pay Plaintiffs' reasonable attorney's fees pursuant to Section 13(K) of the Franchise Agreements.

(t)    As to Count XIX relating to the Breach of the Personal Guaranty Against Defendant Golam, Plaintiffs pray for the following:

(i)    That Defendant Golam be ordered to pay Plaintiffs' actual damages in an amount to be proven at trial, plus prejudgment interest at the rate of 18% per annum;

(ii)    That Defendant Golam be ordered to pay all costs of the action; and

(iii)    That Defendant Golam be ordered to pay Plaintiffs' reasonable attorney's fees pursuant to Section 13(K) of the Franchise Agreements.

(u)    As to Count XX relating to Injunctive Relief, Plaintiffs pray for the following:

(i)    That Defendants, jointly and severally, shall be restrained from violating any of the covenants contained in the Franchise Agreement including but not limited to the Restrictive Covenant contained in section 8(D) and the Effect of Termination contained in section 11.

(ii)    That a preliminary and permanent injunction issue against Defendants, jointly and severally from taking the following actions:

1.    Operating the CellAxs system;

2.    Operating under the CellAxs name;

3.    Utilizing any of the Trade Dress Items;

4.    Utilizing any of Cellairis' Trade Secrets;

5.    Utilizing any Cellairis' Confidential Information;

6.    Selling Cellairis® branded products from CellAxs locations;

(iii)    That Defendants, jointly and severally, be ordered to pay all costs of the action; and

    (iv)    That Defendants, jointly and severally, be ordered to pay Cellairis'

reasonable attorney's fees pursuant to Section 13(K) of the Franchise

Agreements.

    (v)    For such other and further relief as this Court deems just and proper.

This _16th_ day of July, 2010.

Respectfully submitted,
KAUFMAN, MILLER & SIVERTSEN, P.C.


Robert J. Kaufman
Georgia Bar No.: 409197
Jeremy B. Liebman
Georgia Bar No.: 176937

8215 Roswell Rd., Bldg. 800
Atlanta, Georgia 30350
Tel: (770) 390-3900
Fax: (770) 395-6720
E-mail:    rjk@kauflaw.net
        jbl@kauflaw.net

Attorneys for Plaintiffs
I:\WP\CW\7191-065\A100623.Complaint.5.doc

# KAUFMAN, MILLER & SIVERTSEN
### A PROFESSIONAL CORPORATION
## ATTORNEYS AND COUNSELORS AT LAW

8215 ROSWELL ROAD
BUILDING 800
ATLANTA, GEORGIA 30350-6445

Jeremy B. Liebman
E-Mail: jbl@kauflaw.net

TELEPHONE  (770) 390-9200(Ext. 32)
FACSIMILE  (770) 395-6720
Website: www.kauflaw.net

MAILING ADDRESS:
P.O. Box 500189
Atlanta, GA 31150-0189

July 16, 2010

**VIA CERTIFIED MAIL/**
**RETURN RECEIPT REQUESTED,**
**BY REGULAR MAIL,**
**and ELECTRONIC MAIL**

**RECEIPT NO.**  70100780000178302727

Mohammed Rahman
4860 Noor Drive
Dublin, Ohio 43016
niha30@msn.com

Powers Law Offices, LLC
Doug Powers
10311 Dawson's Creek Blvd.
Suite E
Fort Wayne, Indiana 46825
doug.powers@powerslawoffices.com

Re:   Cellairis Franchise, Inc.
Our File No. 7191-065

Dear Mr. Rahman:

Please be advised that the law firm of Kaufman, Miller & Sivertsen, P.C. represents Cellairis Franchise, Inc. ("**Cellairis**") and Global Cellular, Inc. ("**Global**"). I am not sure if Mr. Powers still represents you and your company, GMD Silver, Inc.; and I am not sure if he represents you and your company for all franchised units; however, since time is of the essence I wanted to make sure that you received this letter in a timely fashion.

It is my understanding that you have executed Franchise Agreements and Sublease Agreements for the following locations (collectively referred to as "**Locations**"):

1.   Metrocenter Mall located in Phoenix, Arizona
2.   Desert Sky Mall located in Phoenix, Arizona
3.   West County Center located in St. Louis, Missouri (2 units)
4.   Flatiron Crossing Mall #1 located in Broomfield, Colorado



EXHIBIT

Mohammed Rahman
July 16, 2010
Page 2

5.    Fiesta Mall located in Mesa, Arizona
6.    Tucson Mall located in Tucson, Arizona (2 units)
7.    Park Place Mall located in Tucson, Arizona (2 units)
8.    Park City Center Mall located in Lancaster, Pennsylvania
9.    Easton Towne Center located in Columbus, Ohio
10.   Fairfield Mall located in Beavercreek, Ohio
11.   Dayton Mall located in Dayton, Ohio
12.   Tri-County Mall located in Cincinnati, Ohio

### Copying the Cellairis® System

Our client has advised us that you have opened over 60 additional business units under the name CellAxs in various malls across the country. As you are aware, your CellAxs units also sell cellular telephone accessories in mall carts and kiosks. The CellAxs locations were opened and are currently being operated by utilizing the knowledge, know-how, and expertise imported to you by the Cellairis® System, as well as the utilization of Cellairis' trade secrets and confidential information. You have duplicated the Cellairis® System and have copied Cellairis trade dress and specifications, which is why the CellAxs kiosks look substantially similar to the Cellairis kiosks.

Additionally, you have potentially committed a fraud on the consuming public. The adoption and use of the name CellAxs as well as the adoption and use of the kiosk design, specifications, colors, and layout creates a likelihood of consumer confusion deception, and mistake. Your actions have unjustly enriched you and have placed Cellairis' valuable reputation and goodwill in your hands. Your use of the CellAxs name as well as the adoption and use of the kiosk design, specifications, colors, and layout falsely indicates to the consuming public that your CellAxs locations are related, connected, sponsored, or affiliated with Cellairis' franchise System – which is not true.

Based upon your actions of opening and operating units in direct competition to the Cellairis® system and by wrongfully utilizing the Cellairis® System, Cellairis' trade secrets, and Cellairis' confidential information, you have committed an act of default pursuant to Section 10(A) of the Franchise Agreement. Specifically, Section 10(A)(14) provides that:

> FRANCHISEE uses or duplicates the System or engages in unfair competition in violation of this Agreement or discloses any trade secrets or confidential information of Company in violation of this Agreement. If this act of default shall occur, Company shall have the right to terminate this Agreement, such termination to be effective upon notice to FRANCHISEE but with no opportunity to cure;

This is your formal notification that Cellairis is terminating all relationships with you as of Friday, July 16, 2010 for all Locations. Please make arrangements to remove your showcases, product, and other items from each Location by end of business on July 31, 2010.

Mohammed Rahman
July 16, 2010
Page 3

Additionally, the following sections of the Franchise Agreements provide further breaches which you have committed leading to your termination:

A.    Section 8(C): FRANCHISEE acknowledges the uniqueness of the System and that Company is making its knowledge, know-how and expertise available to FRANCHISEE for the purpose of operating the Business Unit.  FRANCHISEE agrees that it would be an unfair method of competition for FRANCHISEE to use or duplicate or to allow others to use or duplicate any of the knowledge, know-how and expertise received from Company for any use other than for the operation of franchised Business Units utilizing the System under the Marks.  FRANCHISEE, therefore, warrants that during the Term of this Agreement, FRANCHISEE will utilize his best and continuing efforts to promote and develop the business at the Business Unit and during the Term hereof and at all times thereafter will not directly or indirectly engage in the operation of any business, other than the franchised Business Unit and other Business Units franchised from Company, which utilizes or duplicates the System, any trade secrets of Company, or the Marks.

B.    Section 8(A)(1): FRANCHISEE agrees not to divulge any of the trade secrets or confidential information to any person other than FRANCHISEE'S employees and then only to the extent necessary for the operation of the Business Unit.

C.    Section 8(A)(2): FRANCHISEE will not, directly or indirectly, at any time during the Term of this Agreement or thereafter, do or cause to be done any act or thing disputing, attacking or in any way impairing or tending to impair Company's or Global Cellular Inc.'s right, title or interest in the Marks or the System.

As a result of this termination, Section 11 of the Franchise Agreements controls the effects of such termination.  Section 11(A) provides that you must immediately discontinue the use of the Marks (as that term is defined in the Franchise Agreements).  Specifically, you must immediately cease using the Cellairis® name.  Additionally, Section 11(B) provides that you must immediately pay all amounts that are due to Cellairis, which sums include unpaid royalties as discussed below.

Furthermore, as a result of the termination of the Franchise Agreements, all of your other agreements that you have signed are also hereby terminated as of the date of this letter.  Section 14 of the Sublease Agreement states that we have the option and right to terminate the Sublease Agreement if the Franchise Agreement is terminated for any reason whatsoever.  Therefore, since Global is the landlord for all of the Locations, it is Global's position that you must vacate the premises immediately.  To the extent that you will have paid rent to Global and you vacate

Mohammed Rahman
July 16, 2010
Page 4

the Locations prior to the end of the month, then Global will reimburse you for the days that you have paid but are not able to utilize. In the event you refuse to discontinue your use of the Marks and/or vacate in a timely fashion, then my clients have authorized me to take all steps necessary to remove you from the Locations pursuant to the Sublease Agreement and the appropriate state law.

## Product Issues

In addition to the above-stated default, my client informs me that you also violated both Sections 5(C) and 6(F) of the Franchise Agreements by selling products that were not only not authorized by Cellairis but also carrying products under circumstances in which based upon our knowledge and belief, the trademark usage was not authorized by the trademark owner. Any sales of unauthorized trademarked goods not only violated each of the Franchise Agreements but are also a violation of the trademark laws of the United States and have serious legal ramifications. The unauthorized sale of trademarked goods is a very serious offense in the United States and can be viewed as both exposing the person to civil liability and as criminal misconduct under United States law. Cellairis cannot tolerate the sale by Cellairis franchisees of unauthorized trademarked goods for two reasons. First such actions by the Cellairis franchisee exposes the entire Cellairis system of company and franchised owned units to serious adverse publicity resulting from the improper and almost certainly illegal actions of a single individual. Second, it exposes Cellairis to potential claims from the trademark owners and action by governmental authorities. Thus, Cellairis has, as a matter of policy, strictly prohibited franchisees from selling unauthorized trademarked goods from Cellairis kiosks.

My clients inform me that they have instructed you on numerous occasions to cease and desist carrying any trademarked product that was not specifically licensed pursuant to the trademark laws of the United States. You have willfully and with a reckless disregard of your contractual obligation and for the law continued in your improper course of action. To that end, be advised that my client has already photographed each of the Locations for purposes of preserving evidence of both the unauthorized product as well as the potentially illegally trademarked product.

Based upon your actions of ordering products from vendors other than Global for resale from the Cellairis locations franchised to you, you have committed further specific acts of default pursuant to Section 10(A) of the Franchise Agreement. Specifically the following sections are some examples of defaults you have committed pursuant to the Franchise Agreements:

(1) **FRANCHISEE** fails to operate the Business Unit in accordance with the operating standards and specifications established from time to time by Company. **FRANCHISEE** shall have five (5) days after notification to cure the default. After any first time default under this provision during the Term of this Agreement, there shall be no right to cure;

Mohammed Rahman
July 16, 2010
Page 5

(2) FRANCHISEE sells any Product, service or product (including unapproved products) in violation of this Agreement. FRANCHISEE shall have five (5) days after notification to cure the default. After any first time default under this provision during the Term of this Agreement, there shall be no right to cure; and

(3) FRANCHISEE fails to sell Products designated by Company. FRANCHISEE shall have five (5) days after notification to cure the default. After any first time default under this provision during the Term of this Agreement, there shall be no right to cure.

### Royalty Issues

In addition to the above, you have not paid the proper amount of royalties for each Location. Section 3(A) of the Franchise Agreements expressly provide that you must pay a Royalty (as that term is defined in the Franchise Agreements) to Cellairis of 5% of your kiosk's gross sales, with said monthly payment due by the 10th day of each month based upon gross sales for the preceding month. Furthermore, Section 7(D) of the Franchise Agreements provide that you shall furnish your gross sales statements, copies of sales tax returns and reports by the 10th day of each month for the preceding month's gross sales. You have not provided gross sales reports and you have underpaid Royalties since the Locations were opened.

Based upon your actions of not paying the proper amount of Royalties and not providing gross sales reports you have committed further acts of default pursuant to Section 10(A) of the Franchise Agreements. Specifically the following sections are some examples of defaults you have committed pursuant to the Franchise Agreement:

(6) FRANCHISEE fails to pay when due any Royalty to company. FRANCHISEE shall have ten (10) days after notification to cure the delinquency. After any first time default under this provision during the Term of this Agreement, there shall be no right to cure.

(8) FRANCHISEE (i) fails to submit any financial or other information required by this Agreement or (ii) knowingly submits a financial statement that understates Gross Sales. If this act of default occurs, Company shall have the right to immediately terminate this Agreement without notice and FRANCHISEE shall have no right to cure;

The failure to provide the gross sales report pursuant to Section 7(D) of the Franchise Agreements, subjects you to another ground for immediate termination.

Mohammed Rahman
July 16, 2010
Page 6

## Abandonment

In addition to the above, with respect to the location at Fairfield Mall, you have abandoned the location without seeking my client's approval. Section 1(A) provides that the Term of the Franchise Agreement was five years and by abandoning the franchise prior to the end of the Term is an act of default. Specifically, Section 10(A)(9) provides:

> FRANCHISEE abandons the franchise relationship without the prior consent of Company at any time during the Term of this Agreement. The cessation of operation of the Business Unit at the Location other than with the consent of Company, whether the Location remains vacant or is converted to another use, shall be considered abandonment of the franchise relationship, provided, however, that the Business Unit shall not be deemed abandoned if the cessation is due to circumstances beyond FRANCHISEE'S reasonable control (such as lack of electrical power, weather conditions, earthquakes, strikes and the like) and FRANCHISEE diligently undertakes to resume operations after the reason for such cessation has been abated. If this act of default occurs, Company shall have the right to immediately terminate this Agreement without notice and FRANCHISEE shall have no right to cure;

**The abandonment of the unit located at Fairfield Mall, subjects you to another ground for immediate termination.**

This letter is not intended to provide you with legal advice. You should consult with your own counsel regarding this letter and your recent activities. Rest assured, in any case, that appropriate legal steps will be undertaken as necessary on behalf of Cellairis to protect its interests. Please note that Section 13(d) of the Franchise Agreement states that Georgia law shall apply and all actions will be brought exclusively in the State of Georgia.

If you have any questions or comments, please feel free to contact the undersigned.

Very truly yours,

Jeremy Liebman
For the Firm

JBL/
cc:   Cellairis Franchise, Inc.
       Global Cellular, Inc.

I:\WP\CW\7191-065\A100622.Termination Letter.1.doc

## VERIFICATION

Personally appeared before the undersigned officer, duly authorized to administer oaths, JAIME BROWN who, upon first being duly sworn on oath, deposes and states that upon his personal knowledge, the facts alleged in the within PLAINTIFFS' VERIFIED COMPLAINT are true and correct.

JAIME BROWN

Sworn to and subscribed
before me, this _16_ day
of _July_, 2010.

Notary Public
My Commission Expires:

[NOTARY SEAL]

SANDRA DAWN KARASIK
NOTARY
EXP. 3-1-2011
FORSYTH COUNTY, GEORGIA
PUBLIC





Select another
search type

Refine this
search

## In the SUPERIOR COURT
## Fulton County, Georgia
## Case No. 2010CV188412

**CELLAIRIS FRANCHISE INC AND GLOBAL
CELLULAR INC VS. GMD SILVER INC., GOLAM
M. RAHMAN INDIVIDUALLY AND RAFIK
HOWLADER INDIVIDUALLY**

Filed on 07/16/2010
Case Type: CONTRACT/ACCOUNT
Judge: Shawn Lagrua
Current Status: Filed

| **Defendant** | **Defendant Attorneys** |
|---|---|
| Gmd Silver Inc | |
| Rahman, Golam M | |
| Howlader, Rafik | |

| **Plaintiff** | **Plaintiff Attorneys** |
|---|---|
| Cellairies Franchise Inc | Kaufman, Robert J |
| | 8215 ROSWELL ROAD |
| | BUILDING 800 |
| | ATLANTA, GA 30350 |
| Global Cellular Inc | |

### Events and Orders of the Court

| Date | Event |
|---|---|
| 08/11/2010 | Acknowledgement of Service |
| 07/16/2010 | CASE INITIATION FORM |
| 07/16/2010 | PLAINTIFF'S ORIGINAL PETITION |

Copyright © 2000 The Software Group. All rights reserved.